Learned, P. J.
This is an action by a sub-contractor against contractors for the building of a portion of the New York, West Shore and Buffalo railway. The plaintiff sues to recover for work which he has' done for the defendants.
The referee finds that plaintiff did work, etc., amounting in all to $164,271.68, and was paid in all $162,700.89. He finds that the plaintiff proceeded so slowly as to a portion *150 of the work that defendants took it and completed it; that this cost them $3,301.25 more than the amount for which plaintiff had agreed to do it; that in doing it they used plaintiff’s tools, for which they should allow him $469. He finds therefore a balance in defendants’ favor of $1,260,96, with interest. •
The plaintiff appeals and urges that the defendants had no right to take away any portion of the work unless they complied strictly with the terms of the written contract in that respect.
The written contract between the North River Construction Company and the defendants contained a clause that if it should appear by the report of the company’s chief engineer that * * * the progress or character of the work or materials furnished are not respectively such as in the opinion of the said chief engineer will insure the completion of the work on this contract within the time stipulated * * * the company may serve written notice on the contractor. * *• * And if on the expiration of ten days after the service of such written notice * * *- the contractor shall have failed to furnish satisfactory -evidence to the company * * * the company may enter upon and take possession of said work, etc.
A similar clause is in the written contract between defendants and plaintiff, except that it speaks of the railroad company’s chief engineer, and that clause contains this further provision: “And it is further distinctly understood and agreed that ‘time,’ whenever mentioned in this agreement, is of the essence of this agreement.”
Now the referee’s finding is that defendants were required by said construction company, and after due and reasonable notice had been given to plaintiff, to take such portion of work from plaintiff as they had a right to do under said contract. The position taken by plaintiff is that the work could not be taken away from him except after the report of the chief engineer' and after the written notice of ten days requiring him to improve the character of the work, etc.
The contract was made in September, 1881, and by its express terms was to be completed within seven months. It was in December, 1882, that defendants took the work from plaintiff. It will be seen that the clause on which plaintiff relies has reference to such progress in the work as will in the opinion of the engineer not insure its completion at the stipulated time.
It is therefore a clause authorizing a precautionary measure before the time when the contract should, by its terms, be completed. • It does not therefore take away the ordinary right which the defendants had, after the lapse of *151 time had shown that the contract had long been broken as to the time of completion. Time was expressly of the essence of the contract. And the work should have been completed in April, 1882. There could be then, in December, 1882, no need for an opinion from the chief engineer that the work would not be “completed within the .stipulated time.” We think then that it was not at that time necessary for the defendants to take the formal proceedings relied on by plaintiff. These were intended specially for a time when it was not ascertained that the plaintiff would not perform his contract.
The plaintiff, however, insists that the fact that plaintiff had not in December, 1882, completed his work, did not authorize defendants to take a portion away without' the opinion of the engineer and the ten days notice. And he urges that the defendant should either have obtained this opinion and given this notice, or they should have treated the entire contract as broken. While in fact the plaintiff continued till March or April, 1883, on a part of his work.
Whether, however, after the defendants took away part of the work in December, 1882, the plaintiff was bound to go on with another part, or whether he might not have treated the whole contract as broken, we need not say. If for failure to complete the work, the defendants took away part of it, their rights are not affected by their allowing plaintiff to go on with another part. If he had broken his contract as to time, still it was specially provided in the contract that to permit him to proceed was not a waiver in any respect of forfeiture or liability for damages.
The plaintiff claims also .an error in this respect An engineer testifies that the total amount removed after plaintiff left was 13,205.63 yards that plaintiff left about •» * 6,766 yards in the original prism to be removed. So that the succeeding sub-contractor removed 6,439.63 yards more than the plaintiff had contracted to excavate. Hence plaintiff says that it is unjust to charge him at 35 cents por yard (the difference between contract and cost price) on this surplus removed, 6,439.63. Therefore plaintiff claims that $1,609,98 should be allowed to him, making a balance in his favor.
But the witness explains this by saying that he accounts for this difference from the amount sliding in; that the contractor gets paid for that the same as the material in the cut; that the slides cause the increase of the material above the prism. In this view therefore the plaintiff, if he had performed his contract, would have executed the same amount as was done by his successor The amount which he would have excavated would have been more than the original prism on account of the slides. It seems there *152 fore that the referee’s computation of damages is not incorrect in this respect.
Another point of the alleged error is in the amount allowed as payments. We have examined the case and the testimony. There seems to be no exception to this finding of payment.
In addition to the summary of monthly payments given by plaintiff in his testimony, there is evidence as to two checks of $250 each and an error in a payment of $1,800, which should be $2,000. We have not, in detail, the computation of the-referee in making up his statement of the amount paid. But these three items above mentioned show $700, which may account for the difference between the referee’s statement and the statement of plaintiff.
Some objections to evidence are to be considered. At one place three percentages of calculations were offered in evidence. Objected to by plaintiff’s counsel, objection overruled and exception. We do not find them in the case and we do not know what they are. Whether they contained anything material we do not know.
Again we find “ produced two books, offered in evidence, objected as not being the originals.” Then farther on, “ Marked, Exhibit No. 1; marked, Ex. No. 2; exception to plaintiff’s counsel.”
As far as we can see these exhibits are estimates of work done by plaintiff. No 2 appears to be signed by Codwise, a resident engineer. No. 1 appears to be a letter from E. G-. Corthell, chief engineer, to Mr. Hastings-, directing him to show and give to plaintiff details of his estimate.
Oodwise was a witness on the stand and testified to the dimensions and amount of work done. And his evidence does not seem to have been objected to. Erom all that we see in the case in regard to these exhibits, we cannot say that there was error. No objection was taken except such as is stated above.
After defendants took the work from plaintiff they employed one Samuel 0. Hunter and another. Samuel 0. Hunter testified that plaintiff gave them an order on defendants, and that he took it to Warren, one of the defendants, and Warren said if it (that is the amount) was coming to plaintiff he would pay it to Samuel 0. Hunter. That remark is objected to; but it was competent. It tended to show an agreement by defendants to pay money to Hunter. Such agreement was a fact, not heresay.
So the evidence of Upper, an engineer of the construction company, was proper. It was the notification to the defendants that the company would take hold of the work if it was not pushed forward more rapidly.
This is peculiarly a case in which the facts can be better *153 comprehended by the referee who sees and hears the witnesses than by an appellate court.
We have examined the evidence, and, so far as we can see, the referee’s findings of fact are supported thereby. And we cannot see that there are any material errors of law. Judgment affirmed with costs. '
Bookes and Landon, JJ., concur.